RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

SEP 2 ʊ 2005

AT 8:30_____M
WILLIAM T. WALSH
CLERK

| | | |
|---|---|---|
| MARLENE LANE | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | No.: |
| v. | : | |
| | : | |
| NEW JERSEY DEPARTMENT OF | : | |
| TRANSPORTATION MALCOLM | : | |
| PALMER, PAUL HOFMANN; | | |
| WILLIAM MULLOWNEY, JOSEPH | : | |
| SACCO AND JOHN DOES 1-10 | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT
### Jury Trial Demanded

Plaintiff, Marlene Lane, claims of the defendants, New Jersey Department of Transportation (hereinafter "DOT"), Malcolm Palmer, Paul Hofmann, William Mullowney, Joseph Sacco, and John Does 1-10, damages upon a cause of action whereof the following is a statement:

### INTRODUCTION

1.     This action for declaratory, injunctive, monetary and other appropriate relief arose in Mount Laurel, New Jersey in the County of Burlington and is brought by plaintiff, Marlene Lane ("Lane"), to redress intentional violations by the defendants, DOT, Malcolm Palmer, Paul Hofmann, William Mullowney, Joseph Sacco, and John Does 1-10, of rights secured to her by the laws of the United States of America and the statutory and common law of the State of New Jersey.

2.     This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C.§§ 2000 (e) et seq. as amended by the Equal Employment Opportunity Act of 1972, the Pregnancy Discrimination Act of 1978, and the Civil Rights Act of 1991 (Title VII); and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. (NJLAD).

## JURISDICTION

3.     Jurisdiction is invoked pursuant to 28 U.S.C. §1331, 42 U.S.C. (e) and §§ 122101 of which provide for original jurisdiction of plaintiff's claims arising under the laws of the United States and over actions to recover damages and to secure equitable and other relief under the appropriate governing statutes.  Mount Laurel, New Jersey in the County of Burlington is the jurisdiction in which the action arose and which Plaintiff and Defendants reside.

4.     This Court has jurisdiction over plaintiff's state claims pursuant to its supplemental jurisdiction as codified at 28 U.S.C.§1367.

5.     Plaintiff has exhausted all administrative remedies, have filed timely complaints of race discrimination in employment with the Equal Employment Opportunity Commission and the New Jersey Division of Civil Rights & Affirmative Action and has taken all other steps necessary to bring this action before this Court.

## VENUE

6.     All actions complained of herein occurred within the jurisdiction of this Court and involve defendants who reside within its jurisdictional limits.

7.     Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §§1391(b) and 1391(c).

2

## PARTIES

8.    Mrs. Lane is African American and a citizen of the United States who resides at 62 Hasting Lane, Willingboro, New Jersey 08046.

9.    Defendant, New Jersey Department of Transportation (DOT) is a governmental entity of the State of New Jersey. Its Offices are located at P.O. Box 600, Trenton, New Jersey 08625 and has in excess of 300 employees.

10.    Defendant, Malcolm Palmer (white male) at all relevant times was the Regional Construction Engineer for Region South and an employee of DOT.

11.    Defendant, Paul Hofmann (white male) was the Supervisor of Plaintiff during all relevant times hereafter and an employee of DOT.

12.    Defendant, William Mullowney (white male) was Supervising Engineer for plaintiff during all relevant times hereafter and an employee of DOT.

13.    Defendant Joseph Sacco (white male) was an employee of defendants DOT during all relevant times.

14.    Defendants John Does 1-10 are unidentified employees of defendant, DOT, who aided, abetted or conspired with the above defendants to discriminate against plaintiff.

## FACTUAL ALLEGATIONS

15.    Plaintiff began employment with defendant employer, NJDOT in March 1984. Plaintiff began her employment as an Engineer Aid II and received several promotions between the periods of 1984-1999.

3

16. During Plaintiff's 21 years of employment with defendant employer, and particularly during years relevant to this case, plaintiff consistently received exceptional Performance Assessment Reviews [PAR] ratings by the defendant. In addition, plaintiff has an impressive resume, both educationally and through occupational experience. Plaintiff's conduct has remained consistently professional; she has never received a single disciplinary infraction, reprimand or warning for any reason throughout her career.

17. Plaintiff asserts that the defendant employer and its upper management personnel have discriminated against her because of her race and gender, African American female, in seeking a promotion to the position of Principal Engineer in Region South of DOT.

18. On or about January 1999 plaintiff took a Civil Service examine for Principal Engineer and was notified that she was eligible for such job.

19. Plaintiff was placed on the Civil Service List; however she was not selected for a position in her region. Plaintiff's name was passed on the first appointment list and she was told by the employer that her name was not reached on the second list of appointments.

20. After not being selected for the aforementioned two appointments, Plaintiff was informed by defendants that, there were not going to be any additional Principal Engineer positions in Region South, therefore she should apply for a position in a different region.

21. Based on the aforementioned information given to plaintiff by defendants, plaintiff applied for a Principal Engineer position in Trenton.

22. On or about March of 2002 plaintiff received a Principal Engineer position in Trenton.

4

23.    Within 6 months after plaintiff took the position in Trenton, five vacancies for Principal Engineer were open by defendants in the South Region.

24.    When the additional positions for  Principal Engineer were open in Region South, such positions were awarded to all white males, and two minorities were past over for such positions.

25.    In 2003 Plaintiff applied for a position in Region South, for two posted job vacancies for Principal Engineer.

26.    Plaintiff interviewed with defendants Hofmann and William Mullowney.

27.    Plaintiff learned prior to the interview that there were two positions open for Principal Engineer however one position had been promised to a white male who was not on the list for such position after Plaintiff had applied.

28.    Joe Paradise, (white male) was the name of the individual placed on the list after Plaintiff had applied for such position.

29.    During the interview defendants Hofmann and Mullowney made every effort to score Plaintiff poorly.

30.    Defendant Hofmann disputed Plaintiff's experience refusing to accept the fact that Plaintiff had been a Resident Engineer since 1992. Hofmann, so much as told Plaintiff she was not being truthful and sought to pull Plaintiff's files to determine how long she had been a Resident Engineer.

31.    Upon realizing Plaintiff's file was not in his office, Defendant later determined that Plaintiff had been a Resident Engineer since 1992, and was truthful in all her answers.

32.    Defendants continued during such interview to undermine Plaintiff's resume' and give her a low score so that the position could be given to a white male.

33.    Defendants awarded such position to Joe Paradise (white male) who was objectively less qualified, had less seniority and was not on the civil service list.

34.    On information and belief on or about December 2003, Plaintiff learned that Defendant Hofmann stated that she would never get a position as Principal Engineer in Region South.

35.    On information and belief on or about December 2003, Plaintiff learned that Defendant Joseph Sacco indicated that he and the other defendants were not going to request positions for Principal Engineer because if too many position were requested they would have to give Plaintiff a position.

36.    On or about December 12, 2003 Plaintiff filed a complaint of discrimination with the Division of Civil Rights and Affirmative Action.

37.    On December 20, 2004, the Division of Civil Right and Affirmative Action concluded that Plaintiff had been discriminated against.  (See attached letter Exhibit "A".)

38.    On June 14, 2005 Plaintiff informed Defendants she was entitled to damages and sought to resolve her discrimination claim. (See attached Exhibit "B")

39.    In response to Plaintiff's letter and subsequent realization that Plaintiff had retained an attorney to legally redress her claims, defendants issued a letter on July 1, 2005 to Plaintiff withdrawing their prior finding of discrimination and re-opening the investigation.

## COUNT I

### Defendant violated the Civil Rights Act of 1964,
### 42 U.S.C. §§ 2000 e et seq.

40. Plaintiff restates and incorporates paragraphs 1 through 39 as if fully stated herein.

41. Defendant employer through its agents and employees discriminated against plaintiff because of plaintiff's race in that plaintiff was subjected to discriminatory, invidious mistreatment and harassment because of her race and in retaliation for filing internal complaints of racial discrimination, prusuring a successful EEOC Determination declaiming that NJDOT violated here rights under the provisions of Title VII of the United States Code by harassing Plaintiff and denying her a promotion on the basis of her race and for instituting and pursuing a law suit under the provisions of the NJLAD against Defendant employer, and for successfully assisting other co-employees with preparation and filing of discrimination actions against the Defendant NJDOT. Defendant's actions unreasonably intimidated plaintiff's witnesses, interfered with her work performance, lead to an intimidating, hostile and offensive work environment permeated with a discriminatory intimidation, so severe and pervasive as to alter the terms and conditions of the plaintiff's employment, constituting a violation of Title VII of the United States Code.

42. In failing to promote plaintiff, defendant has discriminated against plaintiff on account of her national origin in violation of Title VII of the United States Code.

43. By engaging in the above-referenced conduct, the defendant violated plaintiff's right to be free of discrimination in violation of Title VII of the United States Code.

7

44.     As a direct and proximate result of defendant's violations of Title VII of the United States Code, plaintiff has been subjected to pain and suffering, loss of wages and benefits and severe mental anguish and emotional distress.

## COUNT II

## RACE DISCRIMINATION IN VIOLATION OF
## THE NEW JERSEY LAW AGAINST DISCRIMINATION

45.     Plaintiff restates and incorporates paragraphs 1 through 44 as if fully stated herein.

46.     This action is brought pursuant to N.J.S.A. §10:5-1, et seq., which prohibits discrimination against a person on the basis of race and in retaliation for the exercise of rights guaranteed under this Statute, and which further prohibits retaliation against plaintiff's witnesses.

47.     In failing to promote plaintiff, defendant has discriminated against plaintiff on account of her race in violation of the New Jersey Law Against Discrimination.

48.     By engaging in the above-referenced conduct, the defendant violated plaintiff's right to be free of discrimination in violation of the New Jersey Law Against Discrimination.

49.     As a direct and proximate result of defendant's violations of the NJLAD, plaintiff has been subjected to pain and suffering, loss of wages and benefits and severe mental anguish and emotional distress.

## COUNT III

## (MALICIOUS ACTS)

50.     Plaintiff incorporates by reference paragraphs 1 through 49 as though full set forth herein.

51.     The actions of said defendants were malicious in that they furnished false information and did conceal facts to cover up the acts of discrimination against plaintiff.

52.     Defendants actions were reckless and a disregard for the rights of plaintiff.

## COUNT IV
## 42 U.S.C. §§ 1983

53.     Plaintiff incorporates reference paragraphs 1 through 52 though fully set forth herein.

54.     On information and belief, defendants were acting under color of law, to deprive plaintiff of her rights secured by the Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. §§ 1983.

55.     On information and belief, the aforesaid defendants, and each of them, engaged in actions in furtherance of the aims of a conspiracy that resulted in the deprivation of the aforesaid constitutional and statutory rights of plaintiff.

## COUNT V
## (EQUAL PROTECTION)

56.     Plaintiff incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

57.  The actions of defendants were, on information and belief, motivated by racial animus and deprived plaintiff of her rights to equal protection under the law as secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §§ 1983.

## COUNT VI
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58.  Plaintiff incorporates by reference paragraphs 1 through 57 as though fully set forth herein.

59.  As a direct and proximate result of the acts and omissions of the defendants, plaintiff suffered humiliation, shock, and emotional distress, and pain and suffering.

60.  Defendant knew or should have known that their actions would have caused plaintiff emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ms. Lane respectfully requests that this Court:

(a)   Enter a declaratory judgment that defendant's acts, policies, practices and procedures complained of herein have violated and continue to violate the rights of plaintiff as secured to him by federal and state legislative enactments;

(b)   Require defendant to promote plaintiff to her position with defendant, and to give to plaintiff full wages and benefits commensurate to that position;

(c)   Award to plaintiff past and future damages for loss of income, growth opportunities and all benefits denied her due to the improper and unlawful actions of defendant;

10

(d)     Award to plaintiff damages in compensation for her emotional distress, humiliation, loss of reputation and status in the community of her peers, and the loss of her ability to provide herself and her family with the rewards of her years of excellence in her chosen profession;

(e)     Award to plaintiff compensatory damages for plaintiff's emotional distress, humiliation and loss of life's pleasures;

(f)     Grant to plaintiff liquidated damages as allowed pursuant to Title VII and the NJLAD;

(g)     Grant to plaintiff costs, disbursements and reasonable attorneys' fees; and

(h)     Grant to Plaintiff such additional relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

Troy A. Archie, Esquire
Attorney for Plaintiff
Old Fire House #6
339 Front Street – Suite D
Camden, NJ 08102

Dated:  September 20, 2005

11

EXHIBIT   A



# State of New Jersey

DEPARTMENT OF TRANSPORTATION
P.O.Box 600
Trenton, New Jersey 08625-0600

JAMES E. MCGREEVEY
Governor

JACK LETTIERE
Commissioner

December 20, 2004

## REGULAR AND CERTIFIED MAIL-RRR

Marlene Lane
62 Hasting Lane
Willingboro, NJ 08046

RE: Marlene Lane v. Malcolm Palmer, et. al.

Dear Ms. Lane:

On December 12, 2003, you filed a complaint of race and gender discrimination against Malcolm Jeffrey Palmer, Regional Construction Engineer South, Paul Hofmann, Supervisor, and William Mullowney, Supervising Engineer. In your complaint, you alleged that you were discriminated against when you did not receive the lateral transfer to the Principal Engineer position in Region South in December 2003. We have concluded our investigation and determined that the *New Jersey State Policy Prohibiting Discrimination, Harassment or Hostile Environments in the Workplace was violated*. This office has made recommendations to the Division of Human Resources and Assistant Commissioner Howard Zahn in connection with the violation of the *New Jersey State Policy*.

Thank you for bringing this matter to our attention. If we can assist you in the future, please do not hesitate to contact us.

Sincerely,

Nelida Valentin, Director
Division of Civil Rights and Affirmative
Action

Approval:

James Snyder
Deputy Commissioner

cc: F. Howard Zahn, Assistant Commissioner
David A. Sichik, Director
Michele Meyer-Shipp, EEO/DOP

*New Jersey Is An Equal Opportunity Employer • Printed on Recycled and Recyclable Paper*

EXHIBIT   B

# LEWIS P. HANNAH

Attorney at Law

1315 Walnut Street
Suite 1326
Philadelphia, PA 19107
(215) 735-7701
Fax (215) 735-7703

NEW JERSEY OFFICE:
112-114  North Third Street, 2nd Floor
Camden, N.J. 08102
(856) 541-1232

Please respond to: Philadelphia

June 14, 2005

David M. Rosenblum, Esquire
Office of Attorney General
25 Market Street
P.O. Box 112
Trenton NJ, 08625-0112

        Re:   **Marlene Lane v. Malcolm Palmer, et al.**

Dear Mr. Rosenblum:

        Pursuant to our previous conversation I submit this letter and demand to follow up our conversation regarding my client Marlene Lane. As you are aware Mrs. Lane filed a complaint of race and gender discrimination against Malcolm Jeffrey Palmer, Regional Construction Engineer South, Paul Hoffman, her Supervisor and William Mullowney her Supervising Engineer. Mrs. Lane alleged that she was discriminated against when she did not receive a lateral transfer to the position of Principle Engineer in Region South in December 2003. Such complaint was investigated by the Division of Civil Rights and Affirmative Action, Department of Transportation. It was determined that the New Jersey State Policy for Prohibiting Discrimination, Harassment or Hostile Environments in the workplace was violated. Although this office has requested a formal copy of such investigation report and decision along with a copy of Mrs. Lane's personnel file, the Department of Transportation has failed to provide a copy to our office. It is critical that we obtain such information so that we can determine the full extent and nature of the finding of discrimination that occurred against Mrs. Lane. Also it is necessary for us to review such information to determine the full extent of the damages that she sustained. In this regard I am requesting your office to kindly provide us with complete copies of the investigation report that was conducted, any decisions and a copy of Mrs. Lane's complete personnel file.

        It is my understanding that the factual allegations set forth by Mrs. Lane are as such. On or about January of 1999 Mrs. Lane took the examination for the position of Principle Engineer and passed this examination and was placed on the appointment list. However, at such time when the appointment was given out Mrs. Lane was not given the position in the South Region. Thereafter, approximately one year later another position opened up for Principle Engineer and again Mrs. Lane was not selected as the Principle Engineer and the position was given to a less qualified white male that was lower on the list than she was. At such time Mrs. Lane was informed by her supervisors that there would be no further positions in the South Region and that she should look elsewhere to obtain a position as Principle Engineer.

On or about March of 2002 after waiting since 1999 for a position to open up Mrs. Lane took the position in Trenton. The position in Trenton required Mrs. Lane to travel 50 miles a day for a period of two years in order to travel to work. After Mrs. Lane had the position in Trenton for three months several PE positions opened up in Region South. As a result of the excessive traveling that was required of Mrs. Lane from her home in Willingboro to Trenton, New Jersey, she incurred extensive wear and tear to her vehicle and she was required to purchase a new vehicle after only one year of driving. In addition Mrs. Lane had to get up an hour earlier to go to work and it took her an additional hour to arrive home from work.

Also, in the position of Senior Engineer client was not eligible for much overtime that she would have obtained as a Principle Engineer. With overtime and the position salary of Principle Engineer Mrs. Lane would have been entitled to wages in excess of $100,000.00 per year. In addition to lost wages, mileage and the requirement of additional time Mrs. Lane spent on the road as a result of the discrimination she incurred, it is our estimate that she has sustained in excess of $300,000.00 in damages and lost wages and other losses. In addition to the lost wages and loss of income Mrs. Lane's husband suffered from a stroke in 2000 which created severe problems for Mrs. Lane in that because of the distance she was away from her job she would have to take off extra days from work to take her husband to the doctors and other appointments. Whereas if she was closer to her job position she would not have had to take off more than an hour or so and then return to work. Further, because Mrs. Lane left early in the morning and returned late at night, she was unable to care for her husband in an appropriate manner and therefore suffered severe mental and emotional damages as a result of not being able to care for her husband and being away from home.

Mrs. Lane was further examined and seen by Timothy L. Weaver a licensed professional counselor with regards to post traumatic stress and other emotional problems that she had which resulted from this incident. As set forth in the attached report:

1) Mrs. Lane is still suffering from emotional distress, feeling angry, depressed, and distraught.

2) She has thought disturbances as a sense of distrust regarding her white supervisors and about being discriminated against again.

3) She has trouble concentrating on the job.

4) She has sleep disturbance patterns.

5) Social withdraw (i.e. not wanting to be around people in general or her work supervisor inparticular).

6) The onset of asthma attacks followed the above noted violation of her civil rights.

7) She has reoccurring flashbacks of the traumatic events that led to the employee discrimination by her supervisor.

8) Loud outbursts and reoccurring thoughts of aggression towards her supervisor and interviewer.

It was counselor Weavers overall conclusion that Mrs. Lane sustained severe post-traumatic stress disorder. She is still receiving ongoing counseling and out-patient psychotherapy for such trauma. Further such supervisors that discriminated against Mrs. Lane are still currently at her place of employment and therefore she harbors fear and concern regarding such individuals seeking to retaliate and take other discriminatory steps towards her and her family.

Based on the lost wages of $300,000.00 Mrs. Lane sustained and the severe psychological trauma she has been subject to for the last three years it is our professional opinion that a demand for $850,000.00 would be a fair and reasonable amount to make Mrs. Lane whole again. We further note that many of the same individuals who were found liable for discrimination against Mrs. Lane have prior complaints against them for such conduct. Based on our review and the reports from the NAACP and other civil rights organizations in the Region South area there is a severe pattern and practice of discrimination that has been occurring for an extended period of time in the Region South area of the DOT.

Based on these findings and the concerns that my client has, this demand is only open for thirty (30) days. Thereafter it will be our intent to contact the EEOC with regards to reporting this incident and consider filing a class action suit with regards to the pattern and practice of the discrimination that has been occurring at the Regional South Office of Department of Transportation for the last five years.

Please contact me once you have reviewed this matter.

Very truly yours,

Lewis P. Hannah

LPH/jg
Enclosures

CC: Troy A. Archie
Marlene Lane